Thurman, J’.
Tho original action was trespass for taking a cow belonging to plaintiff. Plea, not guilty, with a notice of justification, tho substance of which is, that Spencer was, when, etc., treasurer of Ashtabula county, and Preston & Stevens, the other defendants, his deputies. That the county auditor, in pursuance of the ' statute, on August 31, 1849, delivered the tax duplicate of the county, duly certified, to said treasurer, for<him to collect the taxes assessed thereon. That upon said duplicate there was assessed against the plaintiff, a resident tax-payor of Windsor township in said county, certain taxes, to-wit: $10,021 on his real estate, and $4,093 upon his personal property. That plaintiff having failed and refused to pay said taxes, or any part thereof, and the same remaining due, Spencer, as treasurer as aforesaid, by his said deputies, distrained said cow for the payment thereof, pursuant to the statute, which is the same supposed trespass in the declaration mentioned, all of which took place before the annual settlement of the treasurer with the county auditor for the year 1849.
Upon trial, a verdict was rendered for the defendants, and judgment being given thereon the plaintiff tendered a bill of excep. tions which was signed and sealed. To reverse said judgment this Writ is prosecuted.
By the bill of exceptions it appears that the defendants offered to prove, upon the trial, their official character aforesaid, *and that the cow was taken and distrained for the payment of a plank road tax assessed against tho plaintiff, to the admission of which testimony the plaintiff objected, but his objection was overruled and the testimony given. Tho defendants after giving further testimony rested in chief, whereupon the plaintiff proved that prior to the taking said property he had paid all the taxes assessed against him on said duplicate, except said plank road tax. He then offered to prove that no vote had been taken by the people of Windsor township on the question of making a subscription by the trustees of said township to the capital stock of the “ Lake and Trumbull Plank Road Company,” which testimony was objected to by the defendants, and the objection sustained by the court.
*134 The evidence being closed, the plaintiff asked the court to instruct the jury:
1. That the act of February 14, 1849, so far as it attempted to authorize the taxing of the people of said- township for the payment of any subscription to the capital stock of said company, is unconstitutional and void, and affords no protection to an officer who attempts to collect a tax from them under its provisions.
2. That for the legal justification of the treasurer, in the collection of said plank road tax by the distress and sale of plaintiff’s property, the treasurer is bound to prove that the provisions of the act of incorporation afbresaid, so far as the same required the assent of the people of Windsor township to be given to a subscription to the capital stock of said company, prior to any such subscription or the assessment of any tax therefor, had been complied with.
Which instructions the court refused to give, and did instruct the jujy:
1. That said act of incorporation is a valid and constitutional law.
2. That it was not necessary to their full justification for the defendants to prove that the provisions of said law, or any of them, beyond what appeared on the face of said *tax duplicate, had been complied with, and that said duplicate was sufficient evidence-of authority on the part of the treasurer to collect all the taxes appearing thereon.
To which the rulings of the court, refusal to charge as asked, and the charge as given, the plaintiff excepted, and the same matters are now assigned for error, together with the general assignment that judgment was given -for the defendants instead of for the plaintiff.
The constitutional question presented by the record is the same question that was decided at the March term of this court, in the cases of “ The Cincinnati, Wilmington & Zanesville R. R. Co. v. The Comm’rs of Clinton Co.,” ante, 77, and The Steubenville & Indiana R. R. Co. v. The Trustees of North Township, Harrison County ante, 105, and we see no reason to depart from those decisions.
As to the testimony offered by the defendants and objected to by the plaintiff, it was plainly proper evidence and properly admitted.
The refusal of the court to permit the plaintiff to prove that no vote had beon taken by the people of Windsor township on the *135 question of a subscription to tho stock of said company, raises the point on which the decision of the case turns. The second section of the act of incorporation aforesaid, authorized the trustees of certain townships to subscribe within a given amount to the capital stock of said company. The third section authorizes them to borrow money, or issue bonds or orders, at a rate of interest not exceeding six per centum per annum, on the credit of the township, in order to pay the subscription. The fourth section provides that “annually in each and every year after such subscriptions shall have been made by any township, the county auditor of the proper county shall levy on the grand list of said township such taxes as, together with the tolls arising to such township from said stock, will pay the interest of such loan, or bonds, or orders, and all incidental charges connected therewith, together with the fifth part of the principal of said loan, or bonds, or orders ; and to enable him so to do, it shall *be the duty of the township trustees annually and before the first day of June in each year, to report to the proper county auditor the amount of their loans, or bonds, or orders unpaid, and the amount of their tolls aforesaid, and such other information as such auditor shall require, necessary for the purpose aforesaid; and on failure of said trustees so to do, such auditor shall levy a sufficient tax as aforesaid, predicated on the original amount so subscribed for the particular township, or on the last report of the trustees thereof, as the case may be, and without regard to the tolls received.
Sec. 5 provides that, “ The tax so assessed shall be placed on the county duplicate and collected as in other cases, and the proceeds held by tho county treasurer subject to the control of the township trustees for the purposes aforesaid.”
Bee. 9 provides “That no subscription shall be'made by the trusiees of any township without the assent of the people, to be signified by a vote of the qualified electors, in the manner therein prescribed;” and,
See. 10 requires the return of the vote or election to be made to tho county auditor within two days after such vote.
It is not denied that, in the ease under consideration, a subscription to tho capital stock of said company was made by the trustees of Windsor, nor that the county auditor assessed a tax in the manner pointed out by said charter, nor that he delivered the duplicate properly certified to the county treasurer for collection ; *136 nor is it pretended that the treasurer acted in bad faith or with knowledge of any fact making said tax illegal; but it is alleged (and for the purposes of this suit it must be admitted) that said subscription was unauthorized by a vote of the electors of Windsor, and the question is whether this fact renders the treasurer and his deputies liable to an action of trespass for distraining the plaintiff’s property.
That a treasurer who seizes property to pay a tax assessed, without any color of law for its assessment, or under an *uncon-
stitutional law (which is the same as no law), is liable in trespass, seems to have been decided in McCoy v. Chillicothe, 3 Ohio, 370, and impliedly admitted in Raguet v. Wade, 4 Ohio, and we have no doubt that such is the law.
But that he is so liable where a valid law provides for the tax, and the illegality of the particular assessment is owing to some error or omission of those charged with the execution of the law prior to the treasurer’s being called upon to act, that is, prior to the delivery of the duplicate to him, has never been held in Ohio, so far as we have been able to ascertain. Nor do we see, either upon principle or authority, why he should be liable in such a case, while the reasons for a contrary opinion seem to us quite satisfactory. He, like every one else, is bound to know the law, and if he seize property to pay a tax wholly unprovided for by law, or provided for only by an unconstitutional law, it is right that he should be held liable. There is as much reason in such a case for sustaining an action against him as against any other officer, and the taxpayer ought not to be remediless. But, on the other hand, he is not bound to know all the facts that have occurred, or omissions of duty that have taken place prior to the time fixed by the law when his duties in the premises commenced. He is not called upon to act until the duplicate is delivered to him, and when it is so delivered, duly certified and apparently legal on its face, the law requires him to collect the taxes therein assessed, and is as mandatory upon him as a writ of execution is to a sheriff, and ought, in general, to be an equal protection. In Taylor v. Alexander et al., 6 Ohio, 147, the court said : “ The principle is well established, that executive officers, being obliged to execute process, are protected in the rightful discharge of their duty, provided the process issued from a court or magistrate having jurisdiction of the subject-matter. And if the magistrate proceed unlawfully in issuing the *137 process, he, and not the executive officer, will be liable for the in-» jury.”
*And, again: “ It does not comport with law or correct policy to permit an executive officer or those he commands as his posse to examine into the regularity of the proceedings of the court whose process they execute, or to confer upon them authority to proceed or forbear as they may judge best. The rule that holds them to know the extent of jurisdiction requires for its justification some legal subtlety, but rests on far different grounds from that urged by the plaintiff.”
Now, without meaning to say that the cases of sheriff and treasurer are, in all respects analogous, it yet seems to us that the above quoted remarks have much weight upon the preceding question. The treasurer’s duties are wholly executive. He has nothing to do with the listing of property .or assessment of taxes. His sole business in respect to taxes is to collect, keep, and disburse them according to law. Suppose our law was similar to that of some of the other states, and the defendants had distrained the property in question under a warrant issued by the assessors of a tax, would not that be process under which they would be protected ? But our statute which requires him to collect the taxes on the duplicate is as high and compulsory authority as any warrant can be. The law and duplicate are his warrants ; and if the former is valid and the latter duly certified and regular on its face he is protected. Nor does thisuview leave the tax-payer whose property is illegally taken without remedy. His action is against him who committed the fault that renders the assessment illegal. It may be the auditor, it may be the assessor. We can suppose a case in which it would be the county commissioners or township trustees; but it is not the treasurer, who has committed no fault; and these views are fully supported by the authorities. In Massachusetts it seems to have been uniformly held that it is the assessors of the tax and not the collectors of it who are liable—(the law under which it is levied being constitutional.) The precise point was decided in Little v. Merrill, 10 Pick. 547, in which the court say: “If this action will not lie against the *assessors, the plaintiff is remediless. The collector being a mere ministerial officer and acting in pursuance of a regular warrant from a tribunal acting on a subject within their jurisdiction, is not liable.” See, also, Libby v. Burnham et al., 15 Mass. 144; Coburn et al. v. Richardson, 16 Mass. 213 ; Gage v *138 Cuvier et al., 4 Pick. 399 ; Ingle v. Bosworth et al., 5 Pick. 498; Withington v. Eveleth, 7 Pick. 106.
In The Trustees of Rochester v. Symonds, 7 Wend. 395, the court, speaking of a warrant for the collection of taxes, say, “ As the trustees had authority under certain circumstances to issue a warrant, they had jurisdiction of the subject-matter; and if the trustees had issued it without first demanding payment, the collector would be justified in enforcing it, though the trustees themselves would not. It is not the duty of a ministerial officer, nor has ho the right to refuse to execute process regular upon its face, and issued by any court or person having jurisdiction.” The opinion we have expressed disposes of the exception to the refusal of the court to give the charge prayed for, and the objection to the charge as given, as well as the supposed error in rejecting the plaintiff’s testimony. Nothing remains but the general assignment of error, and wo find nothing in the record to support that. The judgment must be affirmed.
Ranney, J., having been of counsel, did not sit in this case. ■